IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCO IBARRA,

        Plaintiff,

vs.                                                                                                          CIV 14-0645 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing (*Doc. 17*) filed on March 04, 2015, and fully briefed June 15, 2015 (*Doc. 22*). Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 8.* Having carefully reviewed the parties' submissions and the administrative record, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in evaluating the opinions of Plaintiff's treating counselors and nurse practitioners and that his reasons for assigning "little weight" to these opinions are not supported by substantial evidence. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

I.      **Background and Procedural History**

Plaintiff is a 43-year old man who did not complete high school[1] and who has a history of homelessness, alcohol and drug addiction, and incarceration. *AR* at 43-45, 56-59, 67, 200 -01, 493, 553.[2] He alleges disability from anxiety, depression, bipolar disorder, antisocial behavior, hepatitis B, and hepatitis C. *Id.* at 200. He filed for disability on August 13, 2009, alleging disability beginning August 12, 2009. *Id.* at 200. He has previously worked as a laborer, construction worker, and dishwasher. *Id.* at 209, 211-16, 492, 552.

Plaintiff's application for disability benefits was denied at both the initial and reconsideration stages, and he requested a hearing before an ALJ. *Id.* at 86-87, 101-103. ALJ Barry Robinson held a *de novo* hearing on January 13, 2012, and issued his decision on February 22, 2012. *Id.* at 16-32, 38-85.

Using the five-step sequential evaluation process,[3] the ALJ found, at Step One,

---

[1] There is conflicting evidence in the record about when Plaintiff stopped attending school; however, there is no dispute that he has not yet completed high school. Administrative Record at 45, 492, 552.

[2] Documents 12-1 through 12-24 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

[3] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If the claimant does not meet a listing, the evaluation proceeds to Step Four, where the claimant

that Plaintiff was not engaged in substantial gainful activity. *Id.* at 21. At Step Two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, antisocial personality disorder, alcohol abuse disorder, and major-depressive disorder. *Id.* However, at Step Three, the ALJ concluded that these impairments did not meet or medically equal the Listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C. F. R. 416.920(d)). *Id.* At Step Four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and found that he had the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. *Id.* at 22. The ALJ also found that Plaintiff was unable to perform his past relevant work. I*d.* at 30. At Step Five, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 31. Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 32. Plaintiff's request that the Appeals Council review the unfavorable decision was denied, leaving the ALJ's decision as the final decision of the Commissioner. *See id.* at 1-5.

## II.     Legal Standard

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

---

must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step-Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner. *Id.* at 1214.

## III. <u>Analysis</u>

Plaintiff makes the following assertions of error by the ALJ: (1) that he failed to afford appropriate weight, with appropriate explanation, to the opinions of Plaintiff's treating counselors and nurse practitioners, affecting both his Step-Three determination as well as the formulation of Plaintiff's RFC; (2) that his RFC finding was underinclusive; and, finally, (3) that by failing to include all limitations in Plaintiff's RFC, he improperly used the vocational expert's answer to a hypothetical to deny benefits. *Doc. 22.* Because the Court concludes that remand is warranted based upon the ALJ's evaluation of Plaintiff's treating counselors and nurse practitioners' opinions, the Court's inquiry begins and ends with Plaintiff's first assertion of error.

Plaintiff contends that the ALJ erred by discounting the opinion of Jeff Pontes, LMHC (Licensed Mental Health Counselor) from A Balanced Path Counseling, LLC as

4

well as the opinions of Seth Williams, APRN (Advanced Practice Registered Nurse), FNP (Family Nurse Practitioner), Kim Janetzky, CNP (Certified Nurse Practitioner), and Edmundo Apodaca LISW (Licensed Independent Social Worker)[4] of Albuquerque Health Care for the Homeless. Generally speaking, these counselors and nurse practitioners, who treated and assessed Plaintiff at various times from 2009 through 2012, found marked limitations in Plaintiff's ability to work with and in proximity to coworkers without being distracted by them as well as in his ability to accept instructions and respond appropriately to criticism from supervisors. *AR* at 26-28. Plaintiff alleges that the ALJ's failure to give adequate consideration to these opinions affected both his Step-Three determination and his formulation of Plaintiff's RFC.  Plaintiff's RFC provides that he can understand, remember and carry out simple instructions, make simple decisions, and respond appropriately to changes in a routine work setting. *Id.* at 22. It also restricts him to a work setting with well-defined expectations with only occasional interaction with coworkers and supervisors and no conduct with the public. *Id.*

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the Listings. In contrast, Plaintiff's treating counselors and nurse practitioners opined that he met the criteria for various Affective Disorders and Anxiety-related Disorders. *Id.* at 518-19, 660-61, 666-67. Plaintiff admits that whether he meets or equals certain Listings is an issue ultimately reserved to the Commissioner.  *See*

---

[4] On July 24, 2014, the New Mexico Regulation & Licensing Department changed the title of LISW (Licensed Independent Social Worker) to LCSW (Licensed Clinical Social Worker) effective 9/1/14.  That change, however, is merely a name change, and there have been no changes to the scope of practice or requirements for licensure. http://www.rld.state.nm.us/boards/Social_Work.aspx; 16.63.1 et seq., N.M.A.C.

*Doc. 17* at 21. Nevertheless, he insists that the ALJ's Step-Three analysis was clear error under *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). *Doc. 17* at 20.

In *Clifton*, the Tenth Circuit found that the ALJ's summary conclusion that the claimant's impairments did not meet or equal any Listing, without any findings supported by the weighing of evidence, was beyond meaningful review and required remand. *Clifton*, 79 F.3d at 1009. Here, the ALJ stated that he found Plaintiff to have no restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, no episodes of decompensation for an extended duration, and no evidence to establish any of the paragraph C criteria. *AR* at 21-22. He did not, however, discuss the evidence he considered in making these findings, nor did he explain the weight he accorded the various medical opinions in determining that Plaintiff did not meet the Listings. *See id.* The ALJ's analysis was admittedly perfunctory. Notably, he failed to even mention Listing 12.06, despite findings by Mr. Williams, Mr. Apodaca, and Mr. Pontes that Plaintiff had the symptoms and limitations to meet that Listing. *Compare AR* at 21 *with AR* at 519, 661, 667. Even so, a thorough analysis at Step Four, one that is both supported by the evidence of record and reviewable, may alleviate concerns regarding an inadequate Step-Three analysis and render such a Step-Three error harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (concluding that reversal was not required where the ALJ's factually-substantiated findings at Steps Four and Five alleviated any concern that the claimant might have been adjudged disabled at Step Three). As such, it is the ALJ's evaluation of the treating counselors and nurse practitioners' opinions at Step Four on which this Court's decision turns.

Plaintiff contends that that the ALJ erred at Step Four (1) by giving the opinions of Plaintiff's treating counselors and nurse practitioners "little weight" on the basis that they were not "acceptable medical sources," and (2) by elevating Dr. Simutis' opinion (i.e. that Plaintiff had only moderate limitations in his ability to interact with coworkers and the public) over the opinions of Plaintiff's treating counselors and nurse practitioners. *Doc. 17* at 19-25.

The relevant Social Security regulations provide that an ALJ should make a distinction between opinions offered by "acceptable medical sources" and those from "other sources." *See* SSR 06-03p, 2006 WL 2329939. "Acceptable medical sources" are licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a); 20 C.F.R. § 416.913(a). "Other sources" or non-acceptable medical sources, in contrast, include but are not limited to nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.  20 C.F.R. § 404.1502(a); 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" may provide evidence to establish the existence of a medically-determinable impairment, offer medical opinions,[5] or be considered treating sources.[6] *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

---

[5] "Medical opinions," as defined by the regulations, are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s) and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

[6] According to 20 C.F.R. § 404.1527(c)(2), if a "treating source's" opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it will be given controlling weight.

Because they are not "acceptable medical sources," the opinions of Plaintiff's treating counselors, Mr. Pontes and Mr. Apodaca, and his treating nurse practitioners, Ms. Janetsky and Mr. Williams,[7] are not entitled to controlling weight, nor can their opinions be used to establish Plaintiff's medically-determinable impairments. *See id.* Despite these limitations, the regulations still contemplate the use of evidence from non-acceptable medical sources. *See* SSR 6-03p. For instance, non-acceptable medical sources may provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." 20 C.F.R. § 404.1513(d).

The Social Security Administration promulgated Social Security Ruling ("SSR") 06-03p to "clarify how [it] consider[s] opinions from sources who are not 'acceptable medical sources.'" SSR 06-03p. The Ruling states as follows:

> With the growth of managed care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file.

*Id.* Thus, the ALJ was constrained to consider the Plaintiff's treating counselors' and nurse practitioners' assessments and opinions in formulating his RFC. *See Carpenter v.*

---

[7] The Court refers to these non-acceptable medical sources as "treating counselors and nurse practitioners" in order to denote that Plaintiff sought treatment from them, not to suggest that they are "treating sources" as defined by the regulations, whose opinions deserve controlling weight. *Compare* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.") *with Frantz*, 509 F.3d at 1301 (reasoning that only "acceptable medical sources" can be considered "treating sources" under 20 C.F.R. § 404.1527).

8

*Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for diagnosing an impairment under the regulations, the agency has made clear that the opinion of such 'other source' is relevant to the questions of severity and functionality. The ALJ was not entitled to disregard the 'serious problems' set out in [his] opinion simply because he is a chiropractor.") While the Court may not reweigh the evidence, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), it must determine whether the ALJ used the proper standards in evaluating the opinions and whether his findings in this regard are supported by substantial evidence. *See Langley v. Banhart*, 373 F.3d 1116 (10th Cir. 2004).

SSR 06-03p instructs adjudicators to use the same factors used to weigh the opinions of "acceptable medical sources" when weighing opinions from "other sources." SSR 06-03p, at *4. Accordingly, ALJs must consider the following factors when evaluating opinions from non-acceptable medical sources: (1) the examining relationship between the individual and the source; (2) the treatment relationship between the individual and the source, including its length, nature, and extent as well as frequency of examination; (3) the degree to which the source presents an explanation and relevant evidence to support the opinion, particularly medical signs and laboratory findings; (4) how consistent the medical opinion is with the record as a whole; (5) whether the opinion is from an "acceptable medical source" who is a specialist and is about medical issues related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. *Id.* at *3.

The Ruling also directs adjudicators to explain the weight given to opinions from "other sources" or to "otherwise ensure that the discussion of the

**9**

evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. Here, the ALJ specified the weight that he gave to Plaintiff's non-acceptable medical sources, save one treating counselor.[8] *AR* at 29. More specifically, he determined that the opinions of Mr. Williams and Ms. Janetzky, both nurse practitioners with Albuquerque Health Care for the Homeless, were entitled to "little weight." By way of explanation, he stated:

> [n]urse practitioners are not considered to be 'acceptable medical sources.' Evidence from non-acceptable medical sources may not be used to establish the existence of a medically determinable impairment, but may be used to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. Likewise the opinion of Jeff Pontes, MA, LMHC, with A Balanced Path is accorded little weight for the same reasons. Their opinions appear to be based, in large part, on Mr. Ibarra's subjective complaints and not on objective findings.

*Id.* at 29. In contrast to the weight given to Plaintiff's treating counselors and nurse practitioners' opinions, the ALJ assigned "great weight" to the opinions of Cathy Simutis, Ph.D. and Julian Lev, Ph.D., both consultative psychologists, and to the non-examining State agency psychological consultants, indicating that they were consistent with the other evidence of record. *Id.* at 30.

---

[8] Plaintiff contends that the ALJ failed to discuss the opinion of Edmundo Apodaca, LISW and in doing so ran afoul of 20 C.F.R. § 416.927(c). *Doc. 17* at 24. Indeed, 20 C.F.R. § 416.927(c) requires ALJs to "evaluate every medical opinion" received. It appears from the ALJ's discussion of the records from Albuquerque Health Care for the Homeless that he did consider the reports and opinions of Mr. Apodaca, though he did not reference Mr. Apodaca by name. *See* AR at 23-24. If the ALJ had applied the correct legal standards and provided good reasons for discounting the opinions of the medical providers at Albuquerque Health Care for the Homeless, his failure to independently explain the weight given to Mr. Apodaca would be harmless. *See Lately v. Colvin*, 560 Fed. Appx. 751 (10th Cir. Mar. 26 2014) (unpublished) (concluding that the ALJ's failure to explicitly discuss the reasons for not crediting a medical source opinion was harmless, because it was evident from the ALJ's rejection of a nearly-identical opinion that she gave no weight to the opinion for the same reasons.)

Plaintiff, relying upon *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007), insists that the ALJ did not give adequate weight to the opinions of Plaintiff's treating counselors and nurse practitioners, as the law "allows and encourages" use of such opinions regarding functional limitations. *Doc. 17* at 20-21. The ALJ's decision in *Frantz* is distinguishable in that there he failed altogether to specify the weight assigned to the non-acceptable medical source's opinion. *Frantz*, 509 F.3d at 1302. Even so, Plaintiff maintains that the ALJ's analysis remains in error, as his "bald statements that these providers are 'not acceptable medical sources' is not a legally sufficient analysis." *Doc. 17* at 21.

In addition to the explanation offered by the ALJ at Step Four for the weight given to Plaintiff's treating counselors and nurse practitioners' opinions, he also explained at Step Five that he "accorded little weight" to the opinions of these sources, because they were not "deemed *appropriate* medical sources for purposes of this decision." *AR* at 31 (emphasis added). This explanation reveals an apparent flaw in the ALJ's reasoning – that is, that these sources and their opinions were not "appropriate" for his consideration because they were non-acceptable medical sources. To the contrary, the opinions of non-acceptable medical sources, including counselors and nurse practitioners, "*are* significant and *should* be considered with respect to impairment severity and functional effects." SSR 06-03p (emphasis added).

Yet, while these sources' opinions must be considered, their status as non-acceptable medical sources *is* a factor that should be contemplated. SSR 06-03p at *5; *see also* 20 C.F.R. § 416.927(c)(5) (indicating that more weight is generally given to the opinion of a source who is a specialist). SSR 06-03p makes clear that an opinion by a

nurse practitioner may deserve less weight than one by a physician on the basis that the former is a non-acceptable medical source. *See* SSR 06-03p, at *5. Accordingly, it was not necessarily improper for the ALJ to diminish the weight given to Plaintiff's treating counselors and nurse practitioners' opinions on this same basis. *See id*. However, the Court's inquiry must not end there.

The ALJ must also consider additional factors, and, as SSR 06-03p explains, these factors sometimes dictate that an opinion offered by a non-acceptable medical source outweighs the opinion of even a treating "acceptable medical source." *Id.* at *5. For instance, "it may be appropriate to give more weight to the opinion of a [non-acceptable medical source] if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *See id.* at *5.

In addition to the treating counselors and nurse practitioners' status as non-acceptable medical sources, the ALJ also touched upon the underlying basis for their opinions, reasoning that they were largely based upon Plaintiff's subjective complaints rather than objective findings. *See AR* at 29. The degree to which a source gives proper explanation and relevant evidence to support his or her opinion *is* another applicable factor enumerated in SSR 06-03p. *See* SSR 06-03p, at *3. As such, the ALJ provided a facially valid reason for giving these opinions "little weight." Yet Plaintiff contends that the ALJ's analysis in this regard was "faulty" and maintains that "[t]he nature of an assessment of patients with mental disorders requires the clinician to elicit a description of the symptoms from the patient, because psychological illnesses are manifested by observed signs and symptoms, in addition to psychological tests." *Doc. 17* at 22.

**12**

Plaintiff argues that two Tenth Circuit opinions, *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) and *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), dictate a finding of error by the ALJ in discounting Plaintiff's treating counselors and nurse practitioners' opinions on the basis that they relied primarily upon Plaintiff's subjective complaints. *Doc. 17* at 22; *Doc. 22* at 3-4. In both *Robinson* and *Langley*, the Tenth Circuit determined that the ALJs failed to give the opinions of treating psychiatrists and physicians proper weight and failed to provide good reasons for rejecting these opinions. *Robinson*, 366 F.3d at 1082-83; *Langley*, 373 F.3d at 1119. In *Robinson*, the court reasoned that the ALJ's analysis of a treating psychiatrist's opinion was deficient because he failed to articulate the weight, if any, given to the treating physician opinion and failed to explain the reasons for assigning that weight or rejecting the opinion altogether. *Robinson*, 366 F.3d at 1082-83. Similarly, in *Langley*, the court concluded that the ALJ erred in completely rejecting the opinion of the treating physician without considering the relevant factors or determining the less-than-controlling weight to which the opinion was entitled. *Langley*, 373 F.3d at 1120.

*Robinson* and *Langley* also addressed, to some extent, the treating sources' reliance on the claimants' subjective complaints. In *Langley*, the court concluded that the ALJ had improperly rejected the treating physician's opinion "based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'" *Langley*, 373 F.3d at 1121. In *Robinson*, in turn, the court noted that psychological opinions "may rest either on observed signs and symptoms or on psychological tests" and that "observations about claimant's limitations do constitute specific medical findings." *Robinson*, 366 F.3d at

**13**

1083. Both courts emphasized that an ALJ may not reject a treating physician's opinion on the basis of "his or her own credibility judgments, speculation, or lay opinion." *Robinson*, 366 F.3d at 1082; *Langley*, 373 F.3d at 1121.

Neither *Robinson* nor *Langley* is on all fours with the present case, as they both addressed the evaluation of treating physicians' opinions. Treating physician opinions, unlike those from counselors or nurse practitioners, are entitled to controlling weight so long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." SSR 96-2p, 1996 WL 374188, at *2. There is, of course, no treating physician opinion at issue here. Nevertheless, *Robinson* and *Langley* are instructive. The ALJ here, like the ALJs in *Robinson* and *Langley*, provided little explanation of the applicable factors for evaluating the psychological opinions. Furthermore, the ALJ's finding that the treating counselors and nurse practitioners' opinions were largely based on Plaintiff's subjective complaints is, as in *Langley*, both speculative and unsupported by substantial evidence.

The Tenth Circuit has recognized that it is proper for an ALJ to discount a treating provider's opinion on the basis that it merely recites a claimant's subjective complaints. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009). This is particularly true when the ALJ makes a finding that the claimant is not credible, as the ALJ did here.[9] *See Oldham v. Astrue, 509* F.3d 1254, 1259 (finding no error in the ALJ's decision to discount the opinions of treating and examining sources who relied upon

---

[9] The ALJ found Plaintiff not credible based upon a number of factors, including his discontinuation of work secondary to incarceration rather than disabling impairments, his conflicting statements regarding his drug use, indications in the record that he was seen by health care providers in order to have paperwork completed for his social security claim or on the advice of his lawyer, evidence in the record of non-compliance with prescribed treatment, and his resourcefulness in pursuing illegal or non-conventional methods to obtain funds to support a $1,200.00 per month alcohol and drug habit. *AR* at 29.

statements by the claimant that the ALJ found "highly unreliable"). But, here, the treating counselors and nurse practitioners do more than recite Plaintiff's subjective complaints. Both the treating sources and the consultative psychologists detail pertinent historical information elicited from Plaintiff, make various observations regarding Plaintiff's behavior, speech, and thought processes, and assess his Global Assessment of Functioning. *Compare, e.g.*, *AR* at 492-494 *with AR* at 543-546. Common sense dictates that a medical source must necessarily rely upon a claimant's subjective statements in assessing mental impairments like bipolar disorder and PTSD, which both the treating sources and the consultative sources did here.

Significantly, the ALJ does not provide any explanation for his implicit judgment that, in relation to the consultative psychologists, the treating counselors and nurse practitioners relied more heavily on Plaintiff's subjective complaints than the consultative psychologists. Comparing the opinions of the treating counselors and nurse practitioners, which received "little weight," with the opinions of the consultative psychologists, which received "great weight," does not reveal any significant difference in the degree to which the sources opinions relied upon Plaintiff's subjective complaints in evaluating his mental impairments. Indeed, the Court cannot say, based on its review of these opinions, that substantial evidence supports the proposition that the treating counselors and nurse practitioners were more reliant on subjective complaints.

Furthermore, the ALJ did not mention, let alone discuss, the additional factors that must be considered in evaluating the opinions of non-acceptable medical sources. "Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."

*Anderson v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The Court is not satisfied, based upon the ALJ's explanation of the weight given to the various opinions, that the ALJ applied and considered each of the applicable factors. The ALJ made no mention, for instance, of the length of Plaintiff's relationship and frequency of contact with these sources. This factor would have presumably increased the weight given to the opinions of Plaintiff's treating counselors and nurse practitioners, as they saw Plaintiff on multiple occasions. Mr. Apodaca, for example, evaluated Plaintiff twice in late 2009 and on five occasions in 2010, and Mr. Pontes began seeing Plaintiff in late 2011 and continued seeing him through 2012 approximately twice per week.

Absent any discussion of the extent of the sources' relationships with Plaintiff, and without adequate explanation of the ALJ's finding that Plaintiff's treating counselors and nurse practitioners' opinions were based primarily on subjective complaints, this Court concludes that the ALJ has not provided legitimate reasons for giving these opinions "little weight," which are "'sufficiently specific' to enable the [C]ourt to meaningfully review his findings." *See Langley*, 373 F.3d at 1123. In short, the ALJ did not follow the correct legal standards in evaluating these opinions, nor are his reasons for discounting them supported by substantial evidence.

## IV. Conclusion

The Court concludes that the ALJ committed reversible error in his evaluation of the opinions of Plaintiff's treating counselors and treating psychologists, and remand is warranted. Because the Court recommends remand on this basis, it will not address Plaintiff's remaining claims of error as "they may be affected by the ALJ's treatment of the case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 17*) is granted.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent